**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   13-60168-CR-ROSENBAUM**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**

**THOMAS EDLER,**

      **Defendant,**

**----------------------------------------/**


**DEFENDANT'S RESPONSE TO THE PRESENTENCE INVESTIGATION REPORT
AND
REQUEST FOR 120-MONTH (TEN YEAR) SENTENCE**

The defendant, Thomas Edler, by and through his undersigned counsel, and pursuant to

U.S.S.G. § 6A1.2-3, p.s., Fed. R. Crim. P. 32 (d), (e)(2) and (f), and the Fifth Amendment to the

United States Constitution, respectfully registers his Response to the Presentence Investigation

Report (PSR) and Request for a 120-month (Ten Year)  Sentence and as grounds therefore,

states as follows:


## I.  INTRODUCTION:

Pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005), the federal sentencing process has

adopted a three step approach. (See Fed. R. Crim. P. 11(M), amended December 1, 2007,    *U.S.

v. Pugh*, 515 F. 3d 1179 (11th Cir. 2008), and Amendment 741 of the Sentencing Guidelines,

effective November 1, 2010.)    First, the Court is to resolve any disputed guideline issues and

determine the *advisory* guideline range.   To that end, **Mr. Edler objects to the application in the PSR   of § 2G2.1 and a resulting total offense level which is a full 11-levels higher than the parties agreed to in the written Plea Agreement, at paragraph 8.**

Second, the Court is to consider if there are any factors that may warrant a departure from the *advisory* guideline range. Although the PSR fails to identify any factors that may warrant a downward departure, and defense believes such factors exist, he will ask this Court to consider them as sentencing factors under 18 USC § 3553 in determining a *reasonable but not greater than necessary sentence in his case,* consistent with the terms of the written Plea Agreement.

Lastly, the Court is to consider all of the sentencing factors of 18 USC § 3553(a) and impose a sentence which is "reasonable" and not greater than necessary to achieve the sentencing objectives set forth in 18 USC § 3553(a). **Defense believes there are factors for this Court to consider a sentence below the *advisory* guideline range, but consistent with the existing statutory sentencing requirements and the written Plea Agreement, as well as the correct calculation recommended by the parties as part of the Plea Agreement.**

## II. OBJECTIONS TO PSR:

**1.** Mr. Edler objects to the Offense Level Computation section, specifically, paragraphs 30 through 82 of the PSR.  Inconsistent with the written Plea Agreement, the PSR employs the cross reference, pursuant to § 2G2.2(c)(1). **It is that subsection of § 2G2.2, alone, which is responsible for an 11-level difference between what the PSR suggests and what the parties understood and agreed was reasonable.**  And it is that subsection, alone, which produces an *advisory* guideline sentence of Life, limited only by statute to 480 months (40 years), and

four-times greater than was contemplated.[1]    (See PSR, at paragraph 119)

The cross reference is employed, pursuant to § 2G2.2(c)(1), when the offense allegedly involved causing, transporting, permitting,  or offering or seeking by notice of advertisement, a minor to engage in **sexually explicit conduct** for the purpose of visual depiction of such conduct...."  **Sexually explicit conduct** is defined in 18 USC § 2256.  Pursuant to subsection (2)(A), it includes:

(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(ii) bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse, or

(v) lascivious exhibition of the genitals or pubic area of any person

Mr. Edler understands full-well that the charges he has pled guilty to and has accepted responsibility for are very serious and, as a result, he will receive a considerable prison sentence. **However, this offense involved "lewd and lascivious poses of children."  It did not involve sexual contact or any contact listed under 18 USC § 2256 (i) through (iv) and it is, in fact, listed as the lowest prong of the subsection.  However, had this offense involved pornography which met the definition of subsections (i) through (iv), Mr. Edler would face the SAME offense level 43 suggested in the PSR.**

---

[1]   The United States Sentencing Commission has just released its "Sourcebook" of 80,035 federal felony and Class A misdemeanor cases sentenced FYE 2013, October 1, 2012 to September 30, 2013.   According to Table 21 of the "Sourcebook," 99.4 % of all cases were below level 43.   According to Table 23, only 0.6% faced a guideline sentence of Life.

For reasons stated, Mr. Edler asks this Court to adopt the guideline calculations agreed to by the parties in this case and enumerated in paragraph 8 of the written plea agreement.   The total offense level is 32, after Mr. Edler's complete and timely acceptance of responsibility, and, as a first-time offender, his *advisory* guideline range is 121 to 151 months.   Again, pursuant to the written Plea Agreement, the parties will recommend this Court impose a 10-year term of incarceration.

### III.   SENTENCING MEMORANDUM:

As this   Court is aware, district courts are now free from the mandatory nature of the Federal Sentencing Guidelines.   Thomas Edler, who has never before been arrested, let alone incarcerated,   appears before this Court for sentencing after having pled guilty to transportation of child pornography, in violation of 18 USC § 2252(a)(1) and (b)(1), and possession of child pornography, in violation of 18 USC § 2252(a)(4)(B).   **Mr. Edler has asked this Court to adopt the agreement reached by the parties and find that the *advisory* guideline range is 121 to 151 months.   He has also not asked this Court to consider any Chapter Five downward departures; however, he will ask this Court to consider the sentencing factors of 18 USC § 3553 in fashioning a reasonable but not greater than necessary sentence. With that said, Mr. Edler will ask this Court to accept the ten year prison sentence to be recommended by the parties in this case.**

In *United States v. Mariano Franchy*, case No. 13-60095-CR-ROSENBAUM, defendant Franchy pled guilty to one count of distributing child pornography, in violation of 18 USC § 2252(a)(2).   The PSR applied § 2G2.2 and suggested a total offense level 34 and an *advisory*

4

guideline range of 151 to 188 months.   The terms of the written plea agreement called for the parties to jointly recommend a five (5) year term of incarceration followed by fifteen (15) years supervised release.   The Court imposed a sentence consistent with the agreement.

Notwithstanding the above, "the court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes of 18 USC § 3553(a).   As this Court is aware, district courts are now free from the mandatory nature of the Federal Sentencing Guidelines. *U.S. v. Booker,* 543 U.S. 220 (2005); *Spears v. United States*, 129 S. Ct. 840 (2009); See also *United States v. Ranum,* 353 F. Supp. 2nd 984 (E.D. Wis. 2005) (Adelman, J.) (holding that "*Booker* was not an invitation to do business as usual.") The Supreme Court's latest decisions emphasize that district courts have wide discretion to fashion an appropriate sentence and that courts of appeals will not disturb those sentences absent an abuse of discretion.   *Kimbrough v. United States*,   522 U.S. 85 (2007)(holding that the Sentencing Guidelines are merely advisory in every respect; judges are free to disagree with them ad sentence individuals reasonably),   and *United States v. Gall*, 128 S. Ct. 586 (2007)(departing from 360 months to 60 months (84.5% downward variance) considering the defendant's personal history and characteristics, finding that a "one-size-fits-all" approach to sentencing is not appropriate in securities fraud case.)

**Recent Trends in Child Pornography Cases:** The PSR in this case recommends a total offense level 43 and an *advisory* guideline sentence of Life, limited to 480 months by statute for this 49 year old first-time offender.   Charges that include conspiracy or solicitation to commit murder, assault with intent to commit murder, kidnaping, arson, most firearm offenses, gathering national defense information, and the export of arms and munitions without a license are not only   far

below level 43, in most cases they are no higher than offense level 35, the level agreed to by the parties before an adjustment for acceptance of responsibility.

A number of Federal judges have testified in front of the U.S. Sentencing Commission that the child pornography guidelines are flawed because they did not result from painstaking empirical study and analysis, which was the Commission's mandate at its conception,  but on legislative politics. See, e.g., ABA Journal June 1, 2009. Over the past decade, Congress has repeatedly amended the child pornography guidelines without benefit of any scientific study on the part of the Sentencing Commission.    "These guidelines are flawed not only because they are duplicative and draconian but most critically because they apply to almost all offenders, allowing no distinction between aggravate and less aggravated behavior." Testimony of USDJ Joan Gottschall, before the Sentencing Commission.    With that said, many sentencing decisions of numerous district court judges and appellate court panels have established the precedent that the advisory guidelines completely fail to provide an accurate measure of culpability. These cases include, but are not limited to the following:  *U.S. v. Baird*, 580 F. Supp 2d 889 (D. Neb. 2008) 41-51 guideline range, sentence of probation; *U.S. v. Cruikshank*, 2009 WL 3673096 (S.D. W. VA) 57-71 months, sentence of 36 months; *U.S. v. Duhon*, 541 F. 3d 391 (5t Cir. 2008), 27-33 months guidelines, sentence of probation; *U.S. v. Huchkins*, 529 F. 3d 1313 (8th Cir. 2008), 78-97 months guidelines, sentence of 18 months; *U.S. v. Phinney*, 599 F. Supp. 2nd 1037 (E. D. Wis. 2009), 37-46 months guidelines, sentence of 6 months; *U.S. v. Polito*, (unpub) 2007 Westlaw 313463 (5th Cir. 2007), 27-33 months guidelines, sentence of probation; *U.S.v. Prisel*, (unpub) 2008 Westlaw 4899451 (6th Cir. 2008), 27-33 months guidelines, sentence of one day; *U.S. v. Rausch*, 570 F. Supp. 2d 1295 (D.Colo. 2008), 97-120 months guidelines, one day

sentence, *U.S .v.  Rowan*, 530 F. 3d 379 (5th Cir. 2008), 46-57 months guidelines, sentence of probation; *U.S. v. Stall*, 581 F. 3d 276 (6th Cir. 2009), 57-71 months guidelines, one day sentence; *U.S. v. Stern*, 590 F. Supp. 2nd 945 (N.D. Ohio 2008), 46-57 months guidelines, sentence of 12 months.

In *U.S. v. Autery*, 555 F. 3d 864 (9th Cir. 2009), the 9th Circuit Court upheld as reasonable a sentence of five years probation for a defendant who plead guilty to possession of child pornography and whose guideline range was 41 to 51 months. In arriving at its probationary sentence, the *Autery* court noted that the defendant did not fit the "profile of a pedophile" Id. at 2205, had redeeming personal characteristics, no sociopathic or criminal tendencies and was motivated and intelligent. Id. The court further found that "incarceration would undermine Autrey's rehabilitation." Id at 2209 and instead determined that outpatient psychological treatment, sex offender registration and specific conditions which limited his access to minors and the internet, together with a lengthy period of supervision by the U.S. Probation Office, constituted a reasonable sentence reflecting the seriousness of the offense and ensuring just punishment, deterrence and ample protection to the public. This precedent, although only advisory, since it originates out of the 11th Circuit is remarkably similar to that of Mr. Edler. Mr. Edler graduated with a Bachelor of Science Degree from the University of Rhode Island in Kingston Rhode Island.  Mr. Edler has volunteered with Boy Scouts of America, and taught in the religious education department of St. Bonaventure Catholic Church in Davie, Florida.  Mr. Edler was the epitome of stability, having worked by CBS Interactive, a subsidiary of CBS Sports between 1997 to June 2013 (approximately 16 years). He was employed as a senior software engineer.

Other courts have similarly varied from Guideline penalties because of exceptional circumstances in child pornography cases. See *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008) (affirming an 18 month prison sentence where the Guideline range was 78-97 months because the twenty-year-old defendant "did not fit the characteristics of the typical defendant who possesses child pornography," "immediately sought psychotherapy," and "made efforts to correct his life"); see also *United States v. Campbell*, 738 F. Supp. 2d 960 (D. Neb. 2010) (imposing a sentence of 60 months probation where the Guideline range was 41-51 months because the images involved "while cancerous, do not appear to be the metastatic variety that is the norm"); United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008) (imposing a two-year prison sentence where the Guideline range was 63-78 months because mental health professionals had found that the defendant was not a pedophile or sexual predator and was unlikely to reoffend).

**Are the Guidelines Entitled to Deference as to Mr. Edler**

Judge James Lawrence King tackled the issue of when it is inappropriate to give deference to the U.S. Sentencing Guidelines in the case of *U.S. v. Riley*, 655 F. Supp. 2d 1298 (So.Dist Fla. J. King 2009). The court pointed out that although advisory, the Sentencing Guidelines are typically afforded a measure of deference. Section 2G2.2 has, however, been the subject of recent judicial criticism which weighs against imposing a sentencing within the Guideline recommendation. Judge Lynn Adelman, in *United States v. Hanson*, 561 F. Supp. 2d

1004, 1010-11 (E.D. Wis. 2008), has appropriately summarized the flaws in this section of the Guidelines, which the Southern District Court jurist reproduced in its opinion:

"In a recent paper published on Professor Douglas Berman's sentencing website, an Assistant Federal Defender traced the history of this guideline and pointed out its serious flaws, which were clearly evident in this case. See Troy Sabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, available at http://sentencing.typepad.com (June 10, 2008). As Stabenow explains, much like the crack guideline criticized by the Supreme Court in Kimbrough, guideline 2G2.2 is not representative of the Commission's typical role or of empirical study. The guideline has been steadily increased despite evidence and recommendations by the Commission to the contrary. Congress has repeatedly amended it directly, ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes. The most recent changes from 2003 apparently came from two lawyers in the Justice Department who persuaded a novice Congressman to add them to the popular Amber Alert bill. Id. at 27. To the extent that the advisory guidelines deserve continued respect from courts, that respect will be greatest where the Commission has satisfied its institutional role of relying on evidence and study to develop sound sentencing practices. This guideline simply does not represent that role, as the Commission itself has acknowledged.

Between 1994 and 2007, the mean sentence in child pornography cases increased from 36 months to 110 months. Id. at 1. As Stabenow notes, this increase was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing. Rather, it was the result of arbitrary increases by Congress slipped into other bills, often with

little or no debate, resulting in direct amendments to the guidelines. Id. at 2. These amendments destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters. To its credit, and as in the crack cocaine context, the Commission sought to persuade Congress not make such changes, but to no avail. Id. at 3-7 (quoting letter from Chair of the Commission). Specifically, the Commission has noted that the enhancement for use of a computer does not make much sense because online pornography comes from the same pool of images found in specialty magazines or adult bookstores. Further, to the extent that use of a computer may aggravate an offense, it does not do so in every case. For example, someone who e-mails images to another (like the instant defendant) is not as culpable as someone who sets up a website to distribute child pornography to a large number of subscribers. If the defendant did not use the computer to widely disseminate the images, use them to entice a child, or show them to a child, the purpose for the enhancement is not served. Id. at 14-15. Yet it applies in virtually all cases.

The Commission itself sought to increase penalties for those offenders who also had a history of sexually exploiting or abusing minors, and posed a greater risk of recidivism, certainly a valid concern. However, Stabenow notes that it did so based on a study of offenders in 1994 and 1995, while most offenders prosecuted in federal court today, such as defendant Hanson, have no such histories. The typical child pornography defendant today has no prior felonies of any kind, let alone prior abuse of children, and is not involved in production. Id. at 13.

Finally, in 2003, as part of the Feeney Amendment to the PROTECT Act, Congress added the 5 level enhancement for number of images. No research, study or rationale was provided for this huge increase. At the same time, Congress established the 5 year mandatory

minimum applicable in this case, as a result of which the Commission also increased the base offense level to 22 to keep pace. Again, this had nothing to do with the Commission's statutory mission of satisfying the purposes of sentencing. Id. at 18-19." *Riley* @1301-1302

Judge King, cited with approval, the court's reliance of Sabenow's, supra, rationale: 'The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History. As noted by the Guidelines Commission, there are "several specific offense characteristics which are expected to apply in almost every case (e.g. use of a computer, material involving children under 12 years of age, number of images)." See Amendment 664 to United States Sentencing Guidelines, (November 1, 2004). The internet provides the typical means of obtaining child pornography, resulting in a two-level enhancement. See U.S.S.G. § 2G2.2(b)(6). Furthermore, as a result of internet swapping, defendants readily obtain 600 images with minimal effort, resulting in a five-level increase. See U.S.S.G. § 2G2.2(b)(7)(D). . . . Undoubtedly, as the Commission recognized, some of these images will contain material involving a prepubescent minor and/or material involving depictions of violence (which may not include "violence" per se, but simply consist of the prepubescent minor engaged in a sex act), thereby requiring an additional six-level increase. See U.S.S.G. § 2G2.2(b)(2),(4). Finally, because defendants generally distribute pornography in order to receive pornography in return, most defendants receive a five-level enhancement for distribution of a thing of value. Sec U.S.S.G. § 2G2.2(b)(3)(B). Thus, an individual who swapped a single picture, and who was only engaged in viewing and receiving child pornography for a few hours, can quickly obtain an offense level of 40. Even after Acceptance of Responsibility, an individual with no prior criminal history can quickly reach a Guideline Range of 210-262

11

months, where the statutory maximum caps the sentence at 240 months. See U.S.S.G. § 5G1.1(a)." *Riley @ 1302.*

The results are illogical; Congress set the statutory range for first time distributors as five to twenty years. Congress could not have intended for the average first time offender with no prior criminal history to receive a sentence of 210 to 240 months. An individual with a Criminal History Category of II faces a Guideline range of 235 to 240 months, and any higher Criminal History score mandates the statutory maximum. These results run contrary not only to Congressional will, but also to a principal Guideline policy - providing harsher penalties to individuals with more significant Criminal History scores while still retaining an incentive for pleas at all Criminal History levels.'

Judge King agreed with Judge Adelman's analysis of the problems with section 2G2.2, and therefore concludes that substantial deference to the recommended Guideline range is not appropriate in the *Riley* case.

Moreover, when reaching an appropriate sentence, district courts "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007). Rather, the court "must make an individualized assessment based on the facts presented. If [the court] decides that an outside-Guidelines sentence is warranted, [the court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id; See also *Rita v. United States*, 551 U.S. 338 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). The Supreme Court rejects, however, the notion that "extraordinary circumstances [are required] to justify a sentence outside the Guidelines

range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 128 S. Ct. at 595.

Further, the sentencing court may consider whether "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 127 S. Ct. at 2465. See also *Kimbrough*, 128 S. Ct. at 570 (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 867, 166 L. Ed. 2d 856 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines, but are obliged to "take account of that range along with the sentencing goals Congress enumerated in 18 U.S.C § 3553(a)).

Significantly, when the Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Kimbrough, 128 S. Ct. at 574); see also Gall, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence). Thus, in cases involving application of Guidelines that do not exemplify the Commission's characteristic institutional role of careful study and empirical analysis, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that

application of the Guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes," even in an ordinary case. Kimbrough, 128 S. Ct. at 575.

Consistent with this mandate, numerous district courts have imposed sentences far below the Guidelines range for offenses involving the possession and transportation of child pornography. See, e.g., *United States v. Baird*, 580 F.Supp.2d 889 (D. Neb. 2008) (guidelines recommended 46-57 months, and court imposed 24 months where defendant had downloaded images of child pornography from the internet and saved them to a CD, possessed over 800 images and one video of child pornography, had no criminal history, and 2 psychologists said he was a low risk for reoffending); *United States v. Hanson*, 561 F.Supp.2d 1004 (E.D. Wis. 2008) (guidelines recommended 210-262 months [but statutory maximum was 240], and court imposed a 72-month sentence where defendant plead guilty to transporting child pornography over the internet, received a positive psychological evaluation, and had no previous criminal record); *United States v. Ontiveros*, 2008 U.S. Dist. LEXIS 58774, 2008 WL 2937539 (E.D. Wis. 2008) (guidelines recommended 97-120 months, and court imposed 60 months where defendant plead guilty to receipt of child pornography and had no criminal history); *United States v. Grinbergs*, 2008 U.S. Dist. LEXIS 91712, 2008 WL 4191145 (D. Neb. 2008) (guidelines recommended 46-57 months, and court imposed 12 months where defendant plead guilty to possession of images of child pornography); *United States v. Johnson*, 588 F.Supp.2d 997 (S.D. Iowa 2008) (guidelines recommended 121-151 months, and court imposed 84 months where defendant plead guilty to receiving images of child pornography); *United States v. Grober*, 595 F.Supp.2d 382 (D.N.J. 2008) (guidelines recommended 235-293 months, and court imposed 60 months where defendant plead guity to possession, receipt, and transmission of child pornography and

possessed over 1,700 images and 200 videos of child pornography); United States v. Beiermann, 599 F.Supp.2d 1087 (N.D. Iowa 2009) (guidelines recommended 210-262 months, and court imposed 90 months where defendant plead guilty to possession, receiving, transporting, and shipping child pornography, and had a positive psychological report); *United States v. Handy*, 2009 U.S. Dist. LEXIS 6471 (M.D. Fla. 2009) (guidelines recommended 78-97 months for possession of child pornography, and court imposed 36 months).

Moreover, Circuit courts have upheld these sentences despite the significant departures from the guidelines. See, e.g., *United States v. Hensley*, 322 Fed. Appx. 776 (11th Cir. 2009) (upheld 80 month sentence for possession of child pornography); United States v. McBride, 511 F.3d 1293 (11th Cir. 2007) (upheld an 84 month sentence for posisession of child pornography when guidelines range was 151-188 months); *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (affirmed a sentence of 66 months when guideline range was 135-168 months, statutory maximum was 120 months, and defendant had received and sent images of child pornography over the internet); *United States v. Smith*, 275 Fed. App'x 184 (4th Cir. 2008) (affirmed a sentence of 24 months when guideline range was 78-97 months where defendant transmitted images of child pornography over the internet, possessed over 1000 images and 262 videos of child pornography, was a low risk of reoffending, and was in treatme

In sum, as stated by Jelani Jefferson Exum, <u>What's Happening with Child Pornography Sentencing?</u>, 24 Fed. Sent'g Rep 85, 89 (2011), there is a "growing consensus among district court judges and the broader legal community that federal sentences for possession of child pornography are too harsh." See also U.S. Sent'g Comm., Results of Survey of U.S. District Court Judges, Jan. 2010 through Mar. 2010, Question 8 (June 2010) (70% of District Judges believe guideline range for child pornography possession is too high and 69% of District judges believe the guideline range for child pornography receipt is too high).[2] **To that end, and in support of the parties' joint recommendation, Thomas Edler offers the following.**

**Nature and Circumstances of the Offense:** Mr. Edler's "crime is serious. Punishment is required. Defendant's guilty plea will result in the stain of a federal felony conviction for a sex-related crime as well as extensive restrictions affecting where he can live and work, and how he will be controlled, will follow him for many years." *United States v. D.M.*, 2013 U.S. Dist. LEXIS 63560, at 3 (E.D.N.Y., May 3, 2013).

As already stated, Mr. Edler is well aware of the serious charges to which he has pled guilty. He has been in continuous custody for almost a year, since his arrest on June 12, 2013, and he now prays this Court will accept the written Plea Agreement between the parties and impose a sentence of 120-months (ten years), followed by another 10 years of supervised release.

Mr. Edler has signed both a written Plea Agreement and Stipulated Factual Basis in this

---

[2] According to "Sourcebook," Table 17, only 33.7 % of child pornography cases (648 of 1,922, received sentences within the guideline range and 1,890 cases received sentences below the guideline range. Of 31 federal offenses listed, only civil rights, national defense and antitrust offenses reported a lower rate.

case. Further, the Offense Conduct section is presented in paragraphs 10 through 23 and 25 of the PSR. Mr. Edler has not objected to this section; he regrettably admits it is all true. He has filed an objection to a portion of Paragraph 24 in that he does not admit to touching F.W., nor exposing himself, nor to instructing F.W. as to how to pose. He has clearly expressed his acceptance of responsibility and his remorse is profound.

With all that said, this is an offense involving child pornography. It is an offense involving lewd and lascivious poses of very young children, admittedly photographed by Mr. Edler between 2001 and 2003. Mr. Edler has admitted he posted those images on his Sony Image Station account in an unprotected file, and that is how they ended up on the Internet. They were inadvertently hacked without the knowledge of Mr. Edler. Upon receiving feedback from another account holder, Edler immediately took the images down. Law enforcement is unable to say how long the images remained available to others on the internet. What is important, is that Edler took the images down himself a very short time after they were originally uploaded to the Image Station account, and over ten years before law enforcement ever showed up at his door. These actions, taken before law enforcement was ever involved evidences a contraindicative intent to victimize children and should be considered by this Honorable Court under Sec. 3553 factors.

Mr. Edler, through Counsel, believes that the parties' recommendation of a ten year prison sentence followed by another ten years supervision does consider 18 USC § 3553, the Nature and Circumstances of the Offense. This case is not about child pornography displaying sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse, involving other children or adults. It involves lewd and lascivious poses, the lowest prong which qualifies the

17

conduct as sexually explicit.   The offense did not involve elaborate file-sharing, the storage of thousands of images, and the wholesale distribution of many more.   Yes, this offense is serious. But we believe the sentence suggested by the parties is substantial, reasonable, and not greater than necessary.

Despite Mr. Edler's instant offense, no evidence was obtained demonstrating any of the trappings suggesting that Edler was a pedophile.   There was no evidence of file-sharing, visitation of child pornography sites, or conduct demonstrating high-risk behavior consistent with "a pedophile profile" as discussed in the *Autery* case, supra.

**Personal and Family History:**   Thomas Edler is a 49 year old native of Providence, Rhode Island.   Before June 18, 2013, he had never been arrested, let alone incarcerated.   He is the son of Alvin and Barbara Edler, the brother of Janice Strippe and Karen Childs, the husband of Cheri Edler for almost 20 years, and the father of Thomas, Jr. and Samantha, ages 14 and 16, respectively.

Mr. Edler grew up in Bristol, Rhode Island.   It was there his father was employed    as a steel worker, his mother worked as a secretary and office administrator, and socioeconomic conditions remained modest.   His parents separated and divorced when he was 17 years old, about the time he completed high school.   His father married again five years later and continues to enjoy a stable marriage.   His mother never remarried.   His formative years and his relationship with his immediate family have been described as normal.

After high school, Mr. Edler left for college in Kingston, Rhode Island.   He earned an undergraduate degree in electrical engineering four years later, in 1986, and returned to his

18

mother's home in Bristol.  He spent a year in Boca Raton, but did not settle permanently in South Florida until 1990.  He married Cheri Fanella, also a native of Rhode Island, on September 4, 1994, and Thomas, Jr. was born on March 28, 1996, and Samantha followed on February 21, 1998.  By then, Mr. Edler and his family were   living in Weston and he was employed as a software engineer with CBS Interactive in Fort Lauderdale.

The PSR reflects that Mr. Edler's mother, his wife, and his children have all been interviewed as to the offense.  No doubt, Mr. Edler and his wife have experienced challenges throughout their marriage; not only Mr. Edler's photography but his wife's breast cancer.  However, despite the facts of this case, Cheri Edler "confirmed her continued support of the defendant but acknowledged that she is very angry.   The defendant's conduct has caused significant trauma and essentially brought an end to her family life as she knew it."   (See PSR, ¶ 95)   Further, "during the interview of Cherie Edler, she confirmed that she did not think that either of her children were sexually molested by their father.    She had the children evaluated by a psychologist who specializes in child sex abuse.   Reportedly, the psychologist found no evidence that Edler sexually abused the children by way of actual inappropriate contact."   (See PSR, ¶ 96)

**The Need to Protect the Public from Further Crimes of the Defendant**: Based upon Dr.Sczechowicz's report, and his interview of Mr. Edler, as well as a review of the evidence in this case, and the administration of the STABLE-2007 assessment to look at thirteen dynamic risk factors for recidivism, Dr. Sczechowicz found as follows:

" No markers statistically related to child pornography recidivism were noted for Mr. Edler… Mr. Edler presented with no indications of a thought disorder or acute

psychopathology. He is considered to be a low risk of sexual recidivism, both contact sexual recidivism and child pornography recidivism. There were few markers present which are associated with an increased risk of sexual recidivism. In addition, it is noted none of the child pornography images were reportedly made after 2009." (Pg. 6-7).

In essence, Edler's behavior was remote in time and bespeaks an ability to live apart from the conduct for which he is being held criminally responsible.

**Mr. Edler's Term of Incarceration Will Greatly Affect His Family:** Mr. Edler has been in continuous custody since June 18, 2013. According to the PSR, ¶ 99, "Cherie Edler advised she is unable to afford the home without the defendant's income; therefore, the home will likely need to be sold." The Edlers and their children have lived at 997 Shadyside Lane in Weston since they bought the house in 2001, when their children were ages 3 and 5. According to the PSR, ¶ 109, without Mr. Edler's $120,000 annual salary, his wife's income cannot come close to meeting the family's financial needs. There is some equity in the Weston home and she may be able to access her husband's retirement funds (after incurring substantial tax and penalty consequences); however, Mrs. Edler will face substantial challenges as long as her husband remains incarcerated.

**Thomas Edler Will Turn 50 Years Old This Year:** Thomas Edler will turn 50 years old this year and he is a first-time offender. He believes this may be considered under 18 USC § 3553 since, at his age and the sentence requested by the parties in this case, recidivism is far less likely. In *United States v. Lucania,* 379 F. Supp. 2d 288, 297 (E.D. N.Y. 2005), the district judge found

that "Post-*Booker* courts have noted that recidivism is markedly lower for older defendants" and in *United States v. Nellum,* 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) (unpub.), the court cited lower recidivism rates for older defendants and granted a downward departure.

**The "Silver Tsunami" And Sentencing - Age and Health as Mitigating Factors,** by Evan A. Jenness and published in the September/October 2013 Champion, discusses the issue of elderly and infirmed inmates.  What is "old" when it comes to sentencing a defendant to prison is not the equivalent of "old" in the outside world.  The medium age of a federal defendant at sentencing is 34.[3]  The National Institute of Corrections defines prisoners 50 and older as "elderly" and "aging",[4] and 15 states specifically define an "older" inmate as 50 or older.[5] Only 10.8 % of all federal defendants are over 50.[6]  Thomas Edler will turn 50 years old this year.

**Bureau of Prisons Designation and Visiting Issues Unique to Mr. Edler:**  The Bureau of Prisons encourages visiting by family, friends, and community groups to maintain the morale of the inmate and to develop closer relationships between the inmate and family members or others in the community"  (see BOP p.s. 5267.07).   However, Mr. Edler's guilty plea to the offenses charged in this case will bar him from a minimum security camp within the BOP.  He will, most

---

[3] Sourcebook, Table 6

[4]Dr. Joann B. Morton, An Administrative Review of the Older Inmate, USDOJ, National Institute of Corrections, 4 (1992)

[5] Old Behind Bars, at 17

[6] Sourcebook, Table 6

likely, be designated to FCI Butner, in North Carolina or, possibly,  low security FCI Coleman

outside of Orlando.   Further, he will be barred from the use of a computer while he is confined

and, therefore, he will not be able to communicate with his family and friends through the

Corrlinks email system.[7] Visits from his family and friends during his many years of confinement

may not be easy.

     **Latest Sentencing Statistics:**    According to the Commission's "Sourcebook," of the 2,326

  cases sentenced in the Southern District of Florida last year,  37.8  %  received sentences

below the *advisory* guideline range, 9.2 % because of substantial assistance motions, and 22.1

  %,  more than  twice the number of   government sponsored motions, because of the

sentencing factors of 18 USC § 3553.

      Why district courts varied downward from the *advisory* guideline range is available

nationally and reported in Table 25B of the "Sourcebook."   The Nature and Circumstances of

the offense and/or History and Characteristics of the Defendant were cited as reasons for a

downward  variance in 9,762 cases; however, Family Ties and Responsibilities, Low

Likelihood of Recidivism/Not a Risk to Community,  Mental and Emotional Condition, and

Remorse  were also specifically cited as reasons that below guideline sentences were imposed

FYE 2012.    **Post-*Booker*, district courts continue to consider the sentencing factors of**

**18 USC § 3553 and vary downward for many of the reasons Thomas Edler      has asked**

**this Court to consider.**

---

[7]   Pursuant to the PSR, ¶ 130, Mr. Edler will also be barred from the   use of the Internet during the ten years on supervised release.

**Conclusion:**     Thomas Edler is well aware that in fashioning a "reasonable" but not greater than necessary sentence in his case, this Court must consider the nature and circumstances of the offense, 18 USC § 3553(a)(1).   To that end, Mr. Edler   has accepted responsibility, he remains profoundly remorseful, and he has signed both a written Plea Agreement and Factual Proffer.   He has not objected to the facts contained in the Offense Conduct section of the PSR and has admitted this case involved lewd and lascivious poses of very young children.   He has objected to the guideline calculations only to the extent they allow for a   120-month (ten year) sentence agreed upon by the parties.

Subsequent to *Booker,* however, this Court must also consider the history and characteristics of the defendant, 18 USC § 3553(a)(1).   To that end, Mr. Edler has been married to Cherie since 1994, and he had been employed with the same company since 1997, earning a good living.   Although Mrs. Edler has understandably stated that the defendant's conduct "essentially brought an end to her family life as she knew it," Mr. Edler continues to have the support of his family.   However, with a 120-month sentence, his wife and children will be forced to move and life will be much different for them for at least the next ten years. As for Mr. Edler, he understands he will, at the very least,    be in his late sixties when he is finally released from the jurisdiction  of this Court.   He will then remain a convicted felon and a registered sex offender for  the remainder of his life. **Pursuant to the written Plea Agreement, the parties will jointly recommend this Court impose a sentence of 120-months (ten years)   imprisonment followed by 10 years supervised release.   Mr. Edler has signed this Agreement and urges this Court to consider that such a sentence is consistent with the sentencing factors of 18 USC § 3553.   There is no reason to believe**

23

**this Court will ever see Mr. Edler again.**

Mr. Edler and Counsel thank this Court for considering our Response to the PSR and Request for a 120-Month (Ten Year) Sentence.   Counsel will have further remarks at the time of sentencing.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by CM/ECF

this 1st day of June, 2014 to all parties of record.


HOWARD J SCHUMACHER, P.A.



/S/ Howard J. Schumacher, Esq.
HOWARD J. SCHUMACHER
1 E. Broward Blvd.
Suite 700
Ft. Lauderdale, FL 33301
(954) 356-0477
FL Bar No: 776335

25